USCA1 Opinion

 

 July 27, 1993 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-2281 COMMERCIAL ASSOCIATES, ET AL., Plaintiffs, Appellees, v. TILCON GAMMINO, INC., Defendant, Appellant. ____________________ ERRATA SHEET ERRATA SHEET The opinion of the Court issued on July 22, 1993, is corrected as follows: On page 16, paragraph 3, line 2: substitute "or" for "and." UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 92-2281 COMMERCIAL ASSOCIATES, ET AL., Plaintiffs, Appellees, v. TILCON GAMMINO, INC., Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Ernest C. Torres, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge, _____________ Campbell, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ John R. Fornaciari with whom Louis V. Jackvony, Jr., Jackvony & ___________________ _______________________ __________ Jackvony, Robert M. Disch and Ross & Hardies were on brief for ________ ________________ _______________ appellant. William R. Landry with whom Michael DiBiase, Karen A. Pelczarski _________________ _______________ ____________________ and Blish & Cavanagh were on brief for appellee, Lechmere, Inc. ________________ ____________________ July 22, 1993 ____________________ BOUDIN, Circuit Judge. This action arises out of ______________ efforts to develop a shopping complex known as Bald Hill Plaza in Warwick, Rhode Island. The plan was the brainchild of real estate developer Anthony DelVicario, who was a general partner in a Massachusetts limited partnership called Commercial Associates ("Commercial"). Tilcon Gammino, Inc. ("Tilcon"), a construction company, learned about the project and expressed interest to DelVicario in obtaining a contract to do certain construction work in connection with the project, primarily site clearing and grading. DelVicario, with Tilcon's assistance, approached Lechmere, Inc. ("Lechmere"), a Minnesota corporation that operates a chain of retail stores, and persuaded Lechmere to join the project as one of the shopping center's "anchor stores." Lechmere purchased the real estate on which its store was to be located, and Commercial acquired the remainder of the property needed for the development. Lechmere and Commercial entered into a written agreement--called the CORE agreement-- which provided inter alia that Commercial would _____ ____ be responsible for the site-clearing work and the construction of the "footprint" underlying the entire shopping complex, including the "pad" upon which Lechmere's store would be built. In consideration, Lechmere agreed to pay Commercial $1.3 million. Commercial then retained Tilcon to serve as the general contractor for the site-clearing -2- -2- work. Commercial and Tilcon entered into a written contract dated February 8, 1985, which generally described the scope of the work to be performed by Tilcon and contained an estimated total cost of "about $2,800,000." Tilcon started the site-clearing work around that same time. DelVicario was the supervisor of the project and directed Tilcon's activities at the work site on a daily basis. Lechmere had wanted the pad completed by March 15, 1985, so its store could open that September in time for the holiday shopping season. At least in part to meet that timetable, DelVicario insisted that Tilcon accelerate its work schedule, requiring Tilcon's staff to work overtime and necessitating extra equipment and supplies. And, according to Tilcon, DelVicario insisted that Tilcon perform substantial work at the shopping center site that went beyond the description of the job contained in the February 8 contract; Tilcon refers to these additional tasks as "extras." Work was completed on schedule, but a dispute soon arose as to Tilcon's compensation. Tilcon claimed that it was entitled to additional compensation for the "extras" it performed at DelVicario's direction. Commercial disagreed-- it believed that Tilcon had agreed to a "guaranteed maximum price" and had been paid in full--and refused to pay the final three bills submitted by Tilcon. Tilcon filed a mechanic's lien on the property under Rhode Island law, and -3- -3- on February 7, 1986, brought an action against Commercial and Lechmere in Rhode Island Superior Court to enforce that lien. Pursuant to the Rhode Island statute, Commercial posted a $1.2 million bond to release the lien, and the action proceed in rem against the bond.1 __ ___ Following a seven-day bench trial the superior court found in favor of Tilcon. In a 28-page opinion, the court found that Tilcon was not bound by the estimated price contained in the original February 8 contract. The court found that Tilcon was bound by a maximum price of $3,095,000 contained in a May 8 letter to Commercial, but that a number of tasks were excluded from this price. Finally, the court found that Tilcon was entitled to compensation on a "cost- plus" basis for numerous "extras" performed at the site, pursuant to the oral assurances of DelVicario. Under Rhode Island law Tilcon could recover in the lien enforcement proceeding only for work performed within the 120-day period prior to notice of the lien (the so-called "lien period"). The court expressly found that Tilcon was entitled to compensation for work performed prior to the lien ____________________ 1The mechanic's lien statute provides that respondents can secure the release of a lien by depositing with the registry of the court "cash equal to the total amount of the accounts and demands of all persons claiming liens" or a surety bond in that amount in lieu of cash. R.I. Gen. Laws 34-28-17. In this case, Commercial deposited a $1.2 million bond with the registry and, apparently without any objection from Tilcon as to the amount, the lien was discharged. -4- -4- period, but held that it had no power to include these amounts in its judgment. The court left it to Tilcon to "pursue this claim in another appropriate proceeding." The Rhode Island court entered judgment against Commercial and Lechmere for $1,329,207.03, which represented the court's painstaking calculation of the compensation due Tilcon for work at the Bald Hill site during the 120-day lien period. Tilcon, however, was able to collect only $1.2 million, the amount of the bond that had been posted to release the lien, leaving a $129,207 deficiency between the judgment and Tilcon's recovery. The superior court's decision was affirmed in all respects by the Rhode Island Supreme Court. Tilcon Gammino, Inc. v. Commercial Assocs., ___________________________________________ 570 A.2d 1102 (R.I. 1990). During the pendency of the mechanic's lien proceeding, Lechmere and Commercial filed this separate action against Tilcon in Rhode Island Superior Court seeking damages of their own arising out of the Bald Hill project. Tilcon removed the action to federal district court based on diversity of citizenship. It also filed a counterclaim against Lechmere and Commercial seeking payment for work that was not recoverable in the lien action--the deficiency between the judgment and the bond, and compensation for work done prior to the lien period--on various theories including breach of contract, unjust enrichment and fraud. -5- -5- After the final decision in the lien case, Tilcon moved for summary judgment on its counterclaim in this action. Tilcon argued that the Rhode Island Superior Court had found as a matter of fact that DelVicario bound Lechmere and Commercial to a series of oral contracts with Tilcon, and that Tilcon was owed specific amounts for work performed under those contracts. Tilcon claimed that Commercial and Lechmere were collaterally estopped from relitigating these issues, and that Tilcon was therefore entitled to judgment as a matter of law for the $129,207 discrepancy between the superior court's judgment and the $1.2 million bond,2 as well as approximately $600,000 for work at the Bald Hill site prior to the lien period. The district court agreed that Commercial and Lechmere are bound by the Rhode Island court's factual findings but only those that were necessary to its judgment. Thus, the court held that the Rhode Island decision conclusively established that Tilcon was owed an additional $129,207 for work performed during the lien period. But the district court concluded that the Rhode Island decision did not resolve the issue of who was liable for the deficiency, nor ___ ____________________ 2Tilcon claims that it is entitled to recover in this case the entire $1,329,207 amount of the Rhode Island judgment. But it is undisputed that Tilcon recovered $1.2 million by executing on the bond, and Tilcon does not explain why it is entitled to more than the $129,207 discrepancy for the lien period. -6- -6- did it establish Tilcon's entitlement to compensation for work prior to the lien period. The case proceeded to trial. The original claims of Lechmere and Commercial having been dismissed, the case was now limited to Commercial's and Lechmere's liability, if any, for work done by Tilcon prior to the lien period. The dispute was further narrowed by stipulations. Pursuant to its prior ruling, the district court instructed the jury that certain facts, primarily, Tilcon's entitlement to $129,207 for work done during the 120-day period, had been established in prior litigation and should not be reconsidered. The court therefore precluded the parties from introducing any evidence regarding work done during the lien period. It was determined that liability for the $129,207 deficiency would be imposed upon whichever of the defendants was held liable at trial for the pre-lien work. At trial, Tilcon introduced evidence seeking to show that Commercial and Lechmere were liable for additional payments for work done outside the lien period. At the close of Tilcon's case the court granted judgment as a matter of law for Lechmere with respect to all of Tilcon's claims, leaving only the claims against Commercial; the reasons for the court's ruling are more conveniently discussed later in this opinion. The jury then returned a verdict in favor of Tilcon against Commercial for $307,500. The district court -7- -7- added to this amount the $129,207 deficiency between the judgment in the mechanic's lien action and the bond, made a number of other adjustments to reflect the stipulations among the parties, and then entered judgment in favor of Tilcon against Commercial for the resulting amount of $268,903, plus prejudgment interest on a certain portion of the debt. Tilcon now appeals. It argues that the Rhode Island court's factual findings, if given proper preclusive effect, required that judgment for the $129,207 deficiency be entered against Lechmere as well as against Commercial. Commercial has not made any appearance in this appeal; if the limited partnership is a defunct or insolvent entity, that might explain why it is important to Tilcon to obtain a judgment against Lechmere. Tilcon also argues that collateral estoppel made Lechmere and Commercial both liable for some $600,000 in work done prior to the lien period and that it was error to submit this issue to the jury, which found only $307,500 due from Commercial. Finally, preclusion aside, Tilcon argues that the court erred by granting judgment for Lechmere as a matter of law on each of Tilcon's claims. We start by considering the collateral estoppel issue before turning to Tilcon's individual claims against Lechmere and Commercial. "Federal courts are bound by state law on the preclusive effect of state judgments." Carillo v. Brown, ________________ 807 F.2d 1094, 1101 (1st Cir. 1986); see also 28 U.S.C. ___ ____ -8- -8- 1738; Gonsalves v. Alpine Country Club, 727 F.2d 27, 29 (1st ________________________________ Cir. 1984). Thus, the district court was obliged to give the Rhode Island Superior Court's decision the same preclusive effect that the Rhode Island courts themselves would give that decision. In order for the doctrine of collateral estoppel to apply under Rhode Island law, "several requirements must be satisfied: there must be an identity of issues; the prior proceeding must have resulted in a final judgment on the merits; and the party against whom collateral estoppel is sought must be the same as or in privity with the party in the prior proceeding." State v. Chase, 588 A.2d 120, 122 _______________ (R.I. 1991). Like a set of Chinese boxes, the identity-of- issues element, which is the crucial one in this case, has three components of its own: "[F]irst, the issue sought to be precluded must be identical to the issue decided in the prior proceeding; second, the issue must actually have been litigated; and third, the issue must necessarily have been decided." Id. at 123. __ In addition, Rhode Island courts, consistent with the prevailing approach, "allow themselves a good deal of latitude in applying the rule [of collateral estoppel], observing the spirit of it rather than the letter." Hill v. _______ Bain, 15 R.I. 75, 23 A. 44 (1885); see also Klein v. ____ ___ ____ _________ Commissioner, 880 F.2d 260, 264 (10th Cir. 1989) ("Trial ____________ -9- -9- courts are granted broad discretion in the application of collateral estoppel."). We think this "latitude" was vested in the district court below, as it was sitting in this diversity case as a surrogate for a Rhode Island tribunal. Tilcon's principal argument is that the district court failed to give proper preclusive effect to the Rhode Island Superior Court's finding that DelVicario was acting as an agent of Lechmere and as such bound Lechmere to the oral contracts with Tilcon. Tilcon's argument is based on a single paragraph in the superior court's decision in which the court stated that DelVicario, in making assurances of payment to Tilcon, was "acting within the scope of [his] authority for and on behalf of . . . Commercial and Lechmere," and therefore bound his principals to the contract modifications. We agree with the district court that the issue of Lechmere's contractual relationship with Tilcon was not one that "must necessarily have been decided" in the lien proceeding, and therefore is not entitled to preclusive effect under Rhode Island law. Chase, 588 A.2d at 123. _____ The "necessarily decided" element of collateral estoppel means in this context that an issue was not only actually decided but also necessary to the judgment. See Restatement ___ (Second) of Judgments 27 (determination must be "essential to the judgment"). The reasons for this condition are that a collateral issue, although it may be the subject of a -10- -10- finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to ___ litigate the issue fully since it is not determinative. See ___ Wright, Miller & Cooper, Federal Practice and Procedure ________________________________ 4421 at 193 (1981 ed.). Under these circumstances, extending the force of the unnecessary finding into a different case is deemed too risky and possibly unfair. Liability under the Rhode Island mechanic's lien statute is not dependent on contract. The statute creates a right of action against a parcel of property whenever improvements are made "by oral or written contract with or at the oral or ___________________ written request of" the landowner. R.I. Gen. Laws 34-28- __________________ 1(a) (emphasis added).3 Thus, Lechmere's liability in the superior court suit (or more technically, the liability of Lechmere's property) flowed from its status as owner and the fact that Tilcon's work on the property was done at Lechmere's request. A "request," of course, is a far cry ____________________ 3Deleting irrelevant language, the Rhode Island mechanic's lien statute provides as follows: Whenever any building . . . or other improvement shall be constructed . . . by oral or written contract with or at the oral or written request of the owner thereof, . . . such building . . . or other improvement, together with the land, is hereby made liable and shall stand subject to liens for all the work done by any person in the construction . . . of such building . . . or other improvement, and for the material used in the construction . . . thereof, which have been furnished by any person. -11- -11- from a contract. To be sure, findings regarding the existence and terms of the contract governing Tilcon's assignment at the work site were necessary to a determination of the amount of Tilcon's lien, since under Rhode Island law ______ the amount of the lien is dependent upon the underlying contract. See Art Metal Constr. Co. v. Knight, 56 R.I. 228, ___ ________________________________ 185 A. 136 (1936). But whether that contract was with Commercial alone, or Commercial and Lechmere jointly, was irrelevant. All that mattered was that Tilcon was acting "at [Lechmere's] request," a fact that was undisputed.4 But we do not rest entirely upon this parsing of the lien statute. If a factual issue were vigorously litigated in a prior proceeding and were the focus of the court's decision, preclusion might well be appropriate even if in hindsight it could be shown that the issue was, in some sense, not strictly essential to the outcome. After all, a factual determination is not inherently untrustworthy just because the result could have been achieved by a different, shorter and more efficient route. In this case, however, the single sentence in question seems to us to fall within the principle that "if an inquiry reveals that the matters had `come under consideration only collaterally or incidentally,' ____________________ 4The Rhode Island Supreme Court's opinion refers to Lechmere only twice. It does not say that DelVicario was Lechmere's agent, nor does it suggest that privity of contract between Lechmere and Tilcon is relevant to the outcome. -12- -12- preclusion is denied." Federal Practice and Procedure, ________________________________ supra, 4421 at 194 (quoting Norton v. Larney, 266 U.S. 511, _____ ________________ 517 (1925)). The Rhode Island Superior Court states that DelVicario was an agent of Lechmere only at one point in its 28-page decision, and there only in passing, somewhat cryptically and without any explanation or analysis. A few pages earlier in the decision, the court states that DelVicario was "acting as Commercial's agent and representative at the job site," with no mention of Lechmere. We do not think it is at all clear that, in the later, single sentence relied on by Tilcon, the superior court meant to determine that DelVicario was Lechmere's agent for purposes of creating a contract between Lechmere and Tilcon.5 We conclude that this "finding" was collateral and not preclusive; and we rest this conclusion on the joint force of three considerations: the lack of any legal need for a finding of such an agency, the lack of clarity in the supposed finding, and the earlier, explicit statement that DelVicario was Commercial's agent. ____________________ 5The later sentence relied upon by Tilcon occurs in the context of a discussion rejecting Commercial's claim that "extras" authorized by DelVicario did not enlarge the liability of Commercial under the written contract; and it is __________ at least possible that the court meant no more than that DelVicario spoke for Commercial and that Lechmere, having contracted with Commercial, was stuck with limited responsibility for DelVicario's extras that flows from the mechanic's lien statute. -13- -13- Tilcon also argues that the district court should have given preclusive effect to the Rhode Island superior court's findings as to the amount owed Tilcon for its work at the Bald Hill site prior to the start of the lien period. Although the Rhode Island court did make some findings as to amounts owed for certain items of pre-lien work, it declined to do so for other items, stating that it had no power under the mechanics lien statute to award compensation for the pre- lien work. Accordingly, the pre-lien findings are on their face matters that it was not necessary to decide. Tilcon seeks to rescue these findings by arguing that they were necessary in order to determine the validity of the "guaranteed maximum price" defense put forward by Commercial and Lechmere. Under Rhode Island law, to the extent that a contractor has promised to do a job for a fixed sum, the amount that can be collected for that job under the mechanic's lien statute is limited to the contract maximum less whatever payments have already been made. See Art Metal ___ _________ Constr. Co., 185 A. at 146-47. Therefore, Commercial and __________ Lechmere argued in the lien case that the guaranteed maximum price agreed to by Tilcon represents an outer limit of recovery. To reject the defense, says Tilcon, the extras done prior to the lien period had to be individually analyzed. -14- -14- This argument is imaginative but not persuasive. The Rhode Island trial judge ultimately rejected the guaranteed maximum price defense on multiple grounds: he found that the original contract price relied upon was a preliminary estimate and that the later binding price was higher, covered only work done after May 8, and covered only work specified in the contract and not numerous extras. The guaranteed maximum price defense then faded from view in his decision, and there was no careful summing up of the pre-lien extras in order to reject the defense. Indeed, as already noted, the judge declined to quantify a number of pre-lien items on the ground that they were not compensable. In the end, it is not clear why the Rhode Island Superior Court made specific findings as to some of the pre- ____ lien items. He did not explain why he did so and the issue was not discussed on appeal. But there is no indication that the trial judge in the lien case followed the line of reasoning urged by Tilcon. It is up to Tilcon to establish the requisites for collateral estoppel, see Federal Practice ___ ________________ and Procedure, supra, 4420 at 185, and in our view this ______________ _____ effort fails as to the pre-lien period findings. This is enough for our purposes although we note that Lechmere's liability would not be affected since--as we shall see-- Lechmere is not liable in any event. -15- -15- The district court's ruling on the collateral estoppel issues did not prevent Tilcon from attempting to prove at trial in this case that Lechmere in fact entered into a contract with Tilcon, or that Lechmere is liable to Tilcon on one of the other theories set forth in Tilcon's counterclaim. Tilcon did attempt to prove such liability, but at the close of Tilcon's case the district court entered judgment as a matter of law in favor of Lechmere on each of Tilcon's claims. Tilcon says this was error as to three claims-- breach of contract, quantum meruit, and unjust enrichment6-- _______ ______ but we agree with the district court's entry of judgment. At trial, Tilcon attempted to prove that DelVicario was acting as an agent of Lechmere when he made oral assurances to Tilcon that it would be paid for the "extra" work performed at the site, and therefore bound Lechmere to a series of oral agreements. The question posed, on review of a directed verdict, is whether a reasonable jury could only have reached the same conclusion as the trial court, and our review is plenary. See NewHarbor Partners, Inc. v. F.D. ___ __________________________________ Rich. Co., 961 F.2d 294, 298 (1st Cir. 1992). We are _________ convinced that there was insufficient evidence to permit a ____________________ 6Tilcon's remaining claims were fraud, constructive trust, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. 1961 et seq. The __ ___ RICO count was dismissed prior to trial, and judgment as a matter of law was entered on the fraud and constructive trust counts. Tilcon does not pursue these claims on appeal. -16- -16- reasonable jury to find that DelVicario was an agent of Lechmere capable of binding Lechmere to a contract. Under Rhode Island law, agency may be based upon either actual authority and apparent authority. See Menard & Co. ___ _____________ Masonry Building Contractors v. Marshall Bldg. Sys., Inc., ____________________________________________________________ 539 A.2d 523, 527 (R.I. 1988) (adopting formulation of Restatement (Second) of Agency). The first theory requires evidence of an actual understanding between the principal and agent that the latter is to act on behalf of the former. There was no suggestion at trial of any actual agreement between Lechmere and DelVicario under which the latter would act as Lechmere's agent with respect to the Bald Hill project. Accordingly, Tilcon presses only a theory of apparent authority. Apparent authority "arises from the principal's manifestation of such authority to the party with whom the agent contracts." Menard & Co. Masonry Building Contractors, _________________________________________ 539 A.2d at 526. In other words, the focus is on the conduct of the principal, not the putative agent. The principal must act in a way that leads a third party to believe that the agent is authorized to act on the principal's behalf, here, authorized to enter into contractual arrangements for Lechmere with Tilcon. And, finally, the third party's belief in the agent's authority to act on behalf of the principal -17- -17- must be a reasonable one. See Rodrigues v. Miriam Hosp., 623 ___ _________________________ A.2d 456 (R.I. 1993); Restatement (Second) of Agency 267. Here, the only evidence of any representations and other conduct by Lechmere regarding DelVicario's authority was the testimony of Thomas Gammino, Tilcon's chief engineer and vice president, that Lechmere's people instructed Tilcon to follow DelVicario's instructions on the job site. But that statement would not permit a reasonable person to conclude that DelVicario's promises regarding payment for work were the promises of Lechmere. Indeed, the statement is perfectly consistent with the opposite interpretation: that Lechmere was leaving the site-clearing work to Commercial and Commercial's man DelVicario, and was keeping its own hands out of it. This is also true of the fact that DelVicario may have been motivated in directing Tilcon's actions by a timetable and other requirements imposed by Lechmere on Commercial. Tilcon points to no other evidence of any actions by Lechmere affirming DelVicario's authority, and this gap in proof is fatal to Tilcon's contract claim against Lechmere. In addition, even if Tilcon in fact believed that DelVicario represented Lechmere,7 no reasonable jury could ____________________ 7In fact, the trial testimony was quite equivocal as to whether Tilcon actually believed that DelVicario represented Lechmere. Only two witnesses testified for Tilcon: its vice president, Thomas Gammino; and its foreman at the Bald Hill site, Robert Pion. Both witnesses described DelVicario as a -18- -18- have found that belief justifiable. At the outset of the project Tilcon joined forces with DelVicario to make a sales pitch to Lechmere; there is no suggestion that DelVicario had any prior affiliation with Lechmere. Gammino testified that it was Tilcon's practice to enter into written contracts with all parties with whom Tilcon dealt, yet Tilcon never entered into or sought to enter into a written contract with Lechmere. Before beginning work Tilcon performed a credit check on Commercial, but made no such inquiries regarding Lechmere. Nor did Lechmere take a more prominent role once work began. The May 8 letter containing a binding maximum price was submitted by Tilcon to Commercial, not to Lechmere. Tilcon submitted all its bills to Commercial for payment. Lechmere was never involved in the billing process, never asked to examine any of Tilcon's invoices, and never made any direct payments to Tilcon. Even when the final three bills went unpaid, Tilcon did not look to Lechmere for compensation. Lechmere was simply one of the anchor stores in a larger project developed by Commercial. It was not until litigation, and the need for a deeper pocket, that Lechmere was brought into the fray. ____________________ representative of Commercial. But Gammino did testify at one point (after considerable hedging) that he "believed . . . that Tony Delvicario was in charge for both people," i.e. ____ Commercial and Lechmere, and so we will assume that Tilcon introduced enough evidence, if barely, to show actual belief. -19- -19- We also agree with the district court's entry of judgment for Lechmere on the unjust enrichment claim. To recover on a theory of unjust enrichment under Rhode Island law, the plaintiff must show that it conferred a benefit on the defendant "in such circumstances that it would be inequitable for the defendant to retain the benefit without payment to the plaintiff for the value thereof." Anthony _______ Corrado, Inc. v. Menard & Co. Bldg. Contractors, 589 A.2d __________________________________________________ 1201, 1202 (R.I. 1991). This claim under state law was equitable and was tried to the district judge. We share the district court's view that Tilcon offered "no evidence that would suggest that the enrichment [to Lechmere] if there was any was unjust," and therefore need not concern ourselves with the standard of appellate review on this issue.8 As the district court noted, virtually all of the work done by Tilcon at the Bald Hill site benefitted all of the participants in the project--including Commercial and the other stores in the shopping complex--and Tilcon offered no principled way of isolating the economic benefit to Lechmere alone. The district court also found that Lechmere's CORE ____________________ 8Courts have disagreed whether unjust enrichment presents a question of fact that is reviewed under a clearly erroneous standard, or a question of law reviewed de novo. __ ____ Compare Commodity Futures Trading Comm'n v. Heritage Capital _______ _____________________________________________________ Advisory Servs., Ltd., 823 F.2d 171, 172 (7th Cir. 1987), _____________________ with In re Estate of Zent, 459 N.W.2d 795, 798 (N.D. 1990). ____ _____________________ Needless to say, such an all-or-nothing choice is not compelled. -20- -20- agreement with Commercial included a payment to Commercial to arrange for the site-clearing work. Tilcon offered no evidence that the benefit to Lechmere resulting from Tilcon's work at the site exceeded that payment. Finally, the court traced the relationship between Tilcon and Lechmere throughout the project and concluded, based on the many of the same factors recited above, that Tilcon had no reasonable expectation of compensation from Lechmere for work done at the site. Tilcon suggests that the court's collateral estoppel ruling precluded the introduction of any evidence of work done during the lien period and deprived Tilcon of the opportunity to show that work done during that period specifically benefitted Lechmere. But there is no indication that the work done during the lien period was uniquely beneficial to Lechmere. We also do not agree with Tilcon that the district court erroneously believed that proof of fraud was necessary in order to recover on an unjust enrichment theory. Rather, the court merely observed, consistent with Rhode Island case law, that the existence of fraud or other wrongdoing is a factor in determining whether the retention of a benefit would be inequitable. See R&B ___ ___ Elec. Co., 471 A.2d at 1354. _________ Turning finally to the quantum meruit claim, this is a ______________ quasi-contract claim which, as the district court noted, is a -21- -21- close cousin to the equitable remedy of unjust enrichment. Historically, the claim allowed a party to collect for the value of services or supplies furnished to another, based on an implied (at law) promise to pay, even though all of the requisites of a formal contract might not be present. See ___ Farnsworth, Contracts, 2.20 at 103 (2d ed. 1990). The _________ district court made clear that, even if this claim were directed against Lechmere, the court would direct a verdict on it for essentially the same reasons given by the court in ruling on the unjust enrichment claim.9 In its brief in this court, Tilcon chooses instead to assimilate its quantum meruit claim to its contract claim, ______________ stressing as to both claims the same facts concerning DelVicario's actions in directing the work to meet Lechmere's deadlines. The chameleon character of quasi-contract claims is such that Tilcon can fairly stress this affinity with contract. But this in turn means that Tilcon must have had a reasonable basis for looking to Lechmere for payment, and for reasons already given we do not think that there was any such relationship between Lechmere and Tilcon, either real or reasonably imagined by Tilcon. See generally Farnsworth, ___ _________ ____________________ 9The district court believed with considerable basis that in Tilcon's complaint the quantum meruit claim, as well ______________ as the contract claim, had been directed solely against Commercial; but in each case the district court ruled in the alternative that the claim lacked merit so we do not discuss the pleading issue further. -22- -22- supra, at 107 ("Nor can a party that has made a contract with _____ another generally disregard the contract and claim restitution from a third person for performance rendered under the contract, even if the third person has benefitted from that performance."). In sum, we think that the district court ably sorted its way through a complex commercial dispute, further complicated by the prior determinations in the mechanic's lien case. It may well be that Tilcon has not recovered all that it is due, possibly because of default by the partnership with which it contracted and partly because of its failure to insist on an adequate bond in the lien proceeding. But the decision to do the work without a contract with or guarantee from Lechmere was Tilcon's own decision. There was no error in the district court's rulings. Affirmed. ________ -23- -23-