Dorothy BATES, through her Guardian, Barbara MURPHY, Plaintiff–Appellant,

v.

SHEARSON LEHMAN BROTHERS, INC., Defendant–Appellee.

No. 94–1300.

United States Court of Appeals, First Circuit.

Heard Sept. 12, 1994.

Decided Dec. 16, 1994.

Quentin Anthony, with whom Sheffield & Harvey, Newport, RI, was on brief, for appellant.

David A. Wollin, with whom Paul V. Curcio, Christopher C. Whitney, and Adler Pollock & Sheehan Inc., Providence, RI, were on brief, for appellee.

Before TORRUELLA, Chief Judge, CAMPBELL, Senior Circuit Judge, and STAHL, Circuit Judge.

TORRUELLA, Chief Judge.

Dorothy Bates, through her guardian Barbara Murphy ("Bates"), brought an action against Shearson Lehman Brothers, Inc. ("Shearson"). Bates claimed that Shearson was liable for the acts of its alleged agent, Carl P. Nykaza, a broker at Shearson, who

diverted approximately $70,000 of Bates' funds, for his own personal account. A trial commenced, and at the conclusion of Bates' case, Shearson moved for judgment as a matter of law. The court granted Shearson's motion, finding that Bates had failed to present sufficient evidence to support her theory that Shearson should be held liable for Nykaza's actions under the theory of apparent authority. Bates now appeals. Although Bates was the victim of a tremendous inequity and we sympathize with her situation, we do not believe that liability can be attributed to Shearson. Therefore, for the following reasons, we affirm.

## I. BACKGROUND

In reviewing the court's decision to grant Shearson's motion for judgment as a matter of law, we consider the evidence in the light most favorable to Bates, the nonmoving party. *Jordan–Milton Machinery, Inc. v. F/V Teresa Marie, II,* 978 F.2d 32, 34 (1st Cir. 1992).

At the time of trial, Bates was an 82–year–old woman. In 1991, Bates entered a nursing home in Providence, Rhode Island. Bates is mentally incompetent and unable to describe the events and transactions which form the basis of this lawsuit.

Nykaza began working in the securities industry as a broker for E.F. Hutton in 1984. E.F. Hutton assigned Nykaza to Bates' account in 1985, at which time Nykaza met with Bates at her home in Providence to discuss the status of her accounts and to solicit money for investment.

Nykaza left E.F. Hutton in 1988 and began working for Thomson McKinnon Securities, Inc. ("Thomson"). Nykaza transferred Bates' account, as well as fifteen or twenty other accounts, from E.F. Hutton to Thomson at that time. While at Thomson, Nykaza continued to manage Bates' account and would visit her at her home two or three times a month.

In the spring of 1989, Nykaza closed Bates' account at Thomson. Nykaza's employment with Thomson also ceased. At this time, Nykaza was attempting to secure a broker position at Shearson in Westport, Connecticut. Shearson hired Nykaza as a broker sometime in June or July, 1989. Shearson policy required brokers to open an account for a customer before a broker could invest any of that customer's money. A branch manager then had to approve all new accounts. Nykaza transferred approximately twelve accounts from Thomson to Shearson, but he never opened an account for Bates at Shearson.

On June 13, 1989, Nykaza went to Bates' home to obtain money. Nykaza prepared a check from her account at Fleet National Bank ("Fleet") in the amount of $25,000, payable to Rhode Island Hospital Trust National Bank ("Hospital Trust"), and had Bates sign it. Nykaza then deposited the check into his personal account at Hospital Trust, without endorsement.

On August 3, 1989, Nykaza went to Bates' home and prepared a second check from Bates' account at Fleet in the amount of $20,000, made it payable to Hospital Trust, and had Bates sign the check. Nykaza then deposited the check into his personal account at Hospital Trust.

On January 9, 1990, Nykaza again went to Bates' home, prepared a third check from Bates' account at Fleet in the amount of $25,000, and made it payable to Hospital Trust. After Bates signed the check, Nykaza deposited it in his personal account at Hospital Trust.

Nykaza's employment with Shearson ended on February 16, 1990. During Nykaza's employment with Shearson, no one at Shearson was aware that Nykaza was receiving money from Bates. Nykaza never deposited at Shearson the funds he received from Bates. Nykaza also never told Bates, or otherwise represented, that he was going to deposit the funds reflected by her checks at Shearson. Nykaza used all the funds obtained from Bates for his own personal benefit.

After leaving Shearson, Nykaza began working for Dominick and Dominick, Inc. ("Dominick") as a broker. Nykaza continued to prepare checks from Bates' account at Fleet for her signature and deposit them into his personal account at Hospital Trust.

These checks, prepared after he left Shearson, totalled $95,000.

On June 12, 1990, Nykaza set up an account at Dominick in the name of "D.M. Bates." Nykaza listed Bates' social security number, but all of the other information on the account was false. Nykaza signed Bates' name to the new account form and all other required documentation. Nykaza then invested approximately $5,000 from money he had previously obtained from Bates. His stated purpose in opening the account was to try to make some money through trading in order to repay Bates.

After Bates discovered Nykaza's diversion of her funds, she brought this lawsuit against Nykaza and Shearson to recover the $70,000 allegedly lost during Nykaza's employment with Shearson. Nykaza subsequently allowed judgment to be entered against him in the sum of $70,000. Bates then proceeded to trial with her suit against Shearson, claiming that it was liable for the acts of its agent Nykaza. After Bates concluded presenting her case at trial, Shearson moved for judgment as a matter of law. The court granted its motion. Bates then moved for a new trial, and the court denied her motion. Bates now appeals.

## II. ANALYSIS

### A. The Court's Judgment as a Matter of Law

In granting Shearson's motion for judgment as a matter of law, the court found that Shearson's liability hinged upon whether Nykaza acted as an agent of Shearson. After concluding that there was no evidence that there was an actual agency, the court determined that the issue was whether Nykaza had apparent authority from Shearson. The court stated:

That essentially there are two prongs to a determination as to whether or not a principal is liable for the acts of its agents or employees in these circumstances, that is, that there must be some kind of manifestation to the third party from the principal that the agent or employee is acting in the

scope or in the course of employment or agency. Certainly there must be some basis which one might believe that indeed this was so. So that there are two prongs here, (1) a manifestation by the principal, and (2) a reliance to some extent by the third party dealing with the agent or employee.

I must consider the evidence at this point in the point of view most favorable to the Plaintiff. However, having said that the evidence it seems to me is totally lacking of any manifestation by Shearson Lehman to the putative investor that Mr. Mykaza [sic] was acting as its agent or employee in receiving funds. Furthermore, there is no evidence at all, even from the point of view of viewing the evidence most favorable to the Plaintiff, of any basis, reasonable or otherwise, for a belief that this was indeed what was happening.

The checks were drawn to Rhode Island Hospital Trust Company. We might have a different situation if they had been drawn to Shearson Lehman but any dealings that were had here were with Mr. Mykaza [sic] and Hospital Trust and the third party. It seems to me given those circumstances I have no choice but to grant the Defendant's motion for judgment as a matter of law and it is granted.

Bates took exception to this ruling. On appeal, she now claims that the court erred, and that the evidence was sufficient to permit the jury to reasonably conclude that Nykaza did have "apparent authority" to act as an agent of Shearson.[1]

As a preliminary matter, we set forth the appropriate standard of review. Appellate review of a motion for a judgment as a matter of law is de novo. *Jordan–Milton Machinery*, 978 F.2d at 34. When a motion for a judgment as a matter of law has been granted, we review the evidence and the inferences reasonably drawn therefrom, in the light most favorable to the nonmoving party. *Id; Fashion House, Inc. v. K Mart Corp.*, 892 F.2d 1076, 1088 (1st Cir.1989). To affirm, we must find that the evidence led to

1. On appeal, Bates does not challenge the district court's ruling that Nykaza lacked actual authority to act as an agent of Shearson in his dealings with Bates.

only one reasonable conclusion. *Jordan–Milton Machinery,* 978 F.2d at 34; *Fashion House, Inc.,* 892 F.2d at 1088; *see Commercial Assocs. v. Tilcon Gammino, Inc.,* 998 F.2d 1092, 1099 (1st Cir.1993). In performing this analysis, we will not make credibility determinations or evaluate the weight of the evidence. *Jordan–Milton Machinery,* 978 F.2d at 34; *Fashion House, Inc.,* 892 F.2d at 1088. "Nevertheless, the evidence to which the nonmovant points must comprise more than fragmentary tendrils: a mere scintilla of evidence is not enough to forestall [judgment as a matter of law], especially on a claim or issue as to which the burden of proof belongs to the objecting party." *Fashion House, Inc.,* 892 F.2d at 1088 (citations omitted).

■■■ Under Rhode Island law, agency may be based upon apparent authority.[2] *Commercial Assocs.,* 998 F.2d at 1099.

"To establish the apparent authority of an agent to do a certain act, facts must be shown that the principal has manifestly consented to the exercise of such authority or has knowingly permitted the agent to assume the exercise of such authority; that a third person knew of the fact and, acting in good faith had reason to believe and did actually believe that the agent possessed such authority; and that the third person, relying on such appearance of authority, has changed his position and will be injured or suffer loss if the act done or transaction executed by the agent does not bind the principal."

*American Title Ins. Co. v. East West Financial Corp.,* 16 F.3d 449, 454 (1st Cir.1994) (quoting *Calenda v. Allstate Ins. Co.,* 518 A.2d 624, 628 (R.I.1986)) (other citations omitted). Apparent authority arises from the principal's manifestation of such authority to the party with whom the agent contracts. *Commercial Assocs.,* 998 F.2d at 1099 (citing *Menard & Co. Masonry Bldg. Contractors v. Marshall Bldg. Systems Inc.,* 539 A.2d 523, 526 (R.I.1988)). The focus is therefore on the conduct of the principal, and not on the putative agent. *Commercial Assocs.,* 998 F.2d at 1099. Additionally, a third party's belief in the agent's authority to act

on behalf of the principal must be a reasonable one. *Id.* (citing *Rodrigues v. Miriam Hospital,* 623 A.2d 456 (R.I.1993)).

■■ In the present case, there is simply no evidence of any representation or conduct by Shearson that would suggest to Bates that Nykaza had authority to act for it. When Nykaza commenced working at Shearson, Nykaza never opened up an account for Bates at Shearson. Thereafter, when Nykaza would go to Bates' home, and prepare checks for Bates to sign, he never had her issue them to Shearson. Rather, the checks were made out to Hospital Trust. Nykaza never deposited any of Bates' funds with Shearson. Additionally, Nykaza never expressly told or otherwise represented to Bates that her funds would be invested with Shearson.

Shearson did not give Nykaza any authority to solicit money from Bates in such a fashion. Shearson policy in no way countenanced Nykaza's actions. Rather, its policy required brokers to open a customer account before investing a client's money. A Shearson branch manager then had to approve any new account. Furthermore, Shearson required that all money placed into an account for investment purposes be made payable to Shearson. Moreover, Shearson had no way to know of Nykaza's dealings with Bates— Nykaza never opened an account at Shearson for Bates, and all of his dealings with her took place at her home.

Even if Bates in fact believed that Nykaza represented Shearson, no reasonable jury could have found that belief justifiable. A generous reading of the evidence would suggest that Bates gave Nykaza money to invest for her, and while Nykaza was working at Shearson, Bates learned, "at one point," that he was working there. Based on this reading, Bates contends that by virtue of Shearson hiring Nykaza to work as a broker for it, she assumed that the money she gave Nykaza would be invested at Shearson. *See* Restatement (Second) of Agency, § 261. A third party's belief in an agent's authority to act on behalf of a principal, however, must be reasonable. *Commercial Assocs.,* 998 F.2d

**2.** The parties both agree that Rhode Island law controls this diversity action.

at 1099; *see American Soc. of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 566, 102 S.Ct. 1935, 1942, 72 L.Ed.2d 330 (1982) (citing Restatement (Second) of Agency § 261 and explaining that under an apparent authority theory, liability can be based upon the fact that the agent's position facilitates the consummation of the fraud, where from the point of view of the third person, the transaction seems regular on its face and the agent appears to be acting in the ordinary course of the business confided to him). Here, the reasonableness of Bates' contention is undermined by the fact that the alleged investments with Shearson did not appear regular on their face—Nykaza never told her that he was investing her money at Shearson, Bates never filled out an application to open an account at Shearson, and the checks she gave Nykaza were not made out to Shearson. *See Veranda Beach Club Ltd. Partnership v. Western Surety Co.*, 936 F.2d 1364, 1378 (1st Cir.1991) (when applying analogous Massachusetts law, court found that plaintiff's knowledge that employee was officer of company did not create a reasonable belief that employee had apparent authority to act for employer). There is simply no evidentiary basis from which to reasonably conclude that Nykaza had apparent authority to act as an agent of Shearson in his dealings with Bates.

### B. The Evidentiary Rulings

Bates claims that the district court erred in excluding certain testimony. Before we analyze the substance of these claims, we set forth the standard of review and certain evidentiary principles. The admission and exclusion of evidence is primarily committed to the discretion of the trial court, and we will not disturb this determination absent a showing of an abuse of discretion. *Doty v. Sewall*, 908 F.2d 1053, 1058 (1st Cir.1990). In general, "[a]ll relevant evidence is admissible" and "[e]vidence which is not relevant is not admissible." Fed.R.Evid. 402. A trial court has appreciable flexibility in admitting or excluding evidence on relevancy grounds. *Veranda Beach Club*, 936 F.2d at 1373. Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401.

### 1. The Proffered Testimony Regarding Justin Grace

Bates claims that the court erred by excluding testimony from Nykaza regarding funds he had received from Justin Grace. To support this contention, Bates argues that Nykaza testified that the first check he received from Bates was a loan in anticipation of his move to Connecticut and his temporary unemployment. To rebut the credibility of this testimony, Bates offered to prove that one month prior to Nykaza's solicitation of Bates for a loan, Nykaza had deposited into his own account a check in the amount of $21,000 from another client, Justin Grace, and that these funds were still available to Nykaza on June 13th. Therefore, Bates argues that because Nykaza did not need a loan from Bates on June 13, 1983, he had other purposes for her check, such as investment.

The court excluded this testimony because it determined that the evidence was irrelevant. We do not believe that the court abused its discretion in so finding. The central issue in this case was whether or not Nykaza had apparent authority from Shearson in his dealings with Bates. As we have previously stated, the focus in determining whether an agent has apparent authority from its principal is not on the conduct of the putative agent, but rather on the conduct of the principal. *Commercial Assocs.*, 998 F.2d at 1099. Nykaza's testimony regarding Grace in no way related to conduct by Shearson. Nykaza's alleged diversion of Grace's funds occurred before he was employed by Shearson. Additionally, Grace was not a Shearson client. Moreover, Bates' overly speculative argument fails to have any tendency to show that Nykaza somehow had apparent authority to act on behalf of Shearson.

### 2. The Proffered Testimony of William Harvey

Bates claims that the court erred in excluding the testimony of William Harvey,

who had two telephone conversations with Nykaza in July 1991, over a year after Nykaza left Shearson. Harvey's testimony, if allowed, was to the effect that Nykaza had told him that part of the funds he had obtained from Bates were for personal use and part of the funds were for investment. Harvey's testimony also would have shown that Nykaza told him that the purpose of the Dominick account he subsequently opened with $5,000 was to regain the monies he had previously taken from Bates. Bates argues that this evidence was necessary to prove that Nykaza obtained the funds from Bates for investment purposes, presumably at Shearson.

The court excluded this testimony because it did not believe that Harvey's testimony added anything to assist the jury with respect to the issue of whether Nykaza was acting as an agent of Shearson in his dealings with Bates. We do not believe that the court abused its discretion in excluding the evidence because it was cumulative and only marginally relevant at best.

The issue in this case was whether or not Shearson had engaged in any conduct that gave Nykaza apparent authority to act as its agent in his dealings with Bates. None of Harvey's proposed testimony was to the effect that Nykaza was going to invest Bates' money *at Shearson*. In fact, Harvey's proffer indicated that Nykaza never mentioned Shearson at all to him.

As a final matter, we note that even if we were to find error in the court's two evidentiary decisions, which we do not, we would be bound to hold the error harmless on this record. Even if this evidence had been admitted, none of the testimony was sufficient to establish that Shearson engaged in any conduct that gave Nykaza apparent authority to act as its agent in his dealings with Bates.

For the foregoing reasons, the decision of the district court is *affirmed.*