USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2000

 DAVID P. HOULT,

 Plaintiff, Appellant,

 v.

 JENNIFER HOULT,

 Defendant, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Reginald C. Lindsay, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Aldrich, Senior Circuit Judge,
 
 and Boudin, Circuit Judge.
 
 

 Edward J. Collins for appellant.
 Kevin P. O'Flaherty with whom Adrienne M. Markham and Goulston
& Storrs, P.C. were on brief for appellee.

October 9, 1998

 
 

 BOUDIN, Circuit Judge. In July 1988, when she was 27
years old, Jennifer Hoult brought suit in the district court
against her father, David Hoult, alleging assault and battery,
intentional infliction of emotional distress, and breach of
fiduciary duty. To support these claims, she alleged that her
father had sexually abused, raped and threatened her from the time
that she was about four years old until she was about sixteen years
old.
 The statute of limitations presented an obvious obstacle. 
Jennifer Hoult sought to overcome it by showing that the alleged
abuse caused her to repress her memory of the events until she
began to recapture those memories during therapy sessions in
October 1985. See M.G.L. 260 4C. The claim of repressed memory
was supported at trial by testimony from a psychiatrist, Dr. Renee
Brandt, who appeared as an expert witness on repression caused by
traumatic abuse.
 In June 1993, the district court conducted an eight day
jury trial in which Jennifer Hoult testified at length, giving
detailed descriptions of extensive alleged abuse by her father; in
addition to other forms of abuse, she testified to five specific
episodes of rape. Supporting testimony was provided by her former
therapist and by Dr. Brandt. In defense, David Hoult testified on
his own behalf, flatly denying the allegations, but presented no
other witnesses.
 On July 1, 1993, the jury returned a verdict in favor of
Jennifer Hoult and ordered damages in the amount of $500,000. This
verdict was preceded by a separate finding by the jury accepting
the statute of limitations defense; in effect the jury found that
Jennifer Hoult had repressed memory of the abuse until it was
rediscovered within the limitations period. David Hoult appealed
both from the judgment against him and the denial of a motion for
a new trial, but both appeals were ultimately dismissed for lack of
prosecution.
 Later, Jennifer Hoult wrote letters to several
professional associations in which she repeated the charge that her
father had raped her. David Hoult then brought the present action
in the district court against Jennifer Hoult, claiming that her
charge of rape against him was defamatory. Jennifer Hoult moved to
dismiss on the ground that the jury verdict in her earlier assault
action had determined that David Hoult had raped her and that David
Hoult was barred by collateral estoppel from relitigating this
finding.
 Initially, the district court denied the motion to
dismiss, saying that the evidence adduced at the trial could have
led the jury to impose liability because David Hoult had sexually
abused Jennifer Hoult "in ways that did not amount to rape" or
could even have done so on the basis of Jennifer Hoult's testimony
that David Hoult had "threatened her with murder, chased her around
the house with a knife, and fondled her in a sexual manner, among
other incidents of violence and assault."
 By motion for reconsideration, Jennifer Hoult argued that
the jury's finding of repression, in rejecting the statute of
limitations defense, was necessarily based on Dr. Brandt's expert
opinion that the repression required "repeated acts" of sexual
abuse; and the only repeated acts of sexual abuse (Jennifer Hoult
argued) were her descriptions of five separate incidents of rape. 
Accepting this argument, the district court allowed Jennifer
Hoult's motion to dismiss the action, and David Hoult now appeals.
 The governing legal doctrine of collateral estoppel,
which we briefly summarize, is largely undisputed; the problem is
one of applying the doctrine to this case. Because the prior
judgment was a federal court judgment, we look to federal law for
its preclusive effect. See Johnson v. SCA Disposal Servs., 931
F.2d 970, 974 (1st Cir. 1991). Subject to certain exceptions, the
general rule on "issue preclusion" is as follows:
 When an issue of fact or law is actually
 litigated and determined by a valid and final
 judgment, and the determination is essential
 to the judgment, the determination is
 conclusive in a subsequent action between the
 parties, whether on the same or a different
 claim.

Restatement (Second) Judgements 27 (1982). Neither side disputes
that this formulation sets forth the governing law.
 David Hoult does not invoke any of the various
exceptions, see Restatement (Second), supra, 28, but instead
says--as did the district judge in his original order refusing to
dismiss--that there is no proof that the jury ever determined that
David Hoult had committed the alleged rapes. The burden is upon
Jennifer Hoult, as the party invoking collateral estoppel, to
establish that the jury did so determine in the original action. 
See Commercial Associates v. Tilcon Gammino, Inc., 998 F.2d 1092,
1098 (1st Cir. 1993).
 Admittedly, the jury made no explicit finding that rapes
occurred. Nevertheless, "[a]n issue may be 'actually' decided [for
collateral estoppel purposes] even if it is not explicitly decided,
for it may have constituted, logically or practically, a necessary
component of the decision reached." Dennis v. Rhode Island
Hospital Trust National Bank, 744 F.2d 893, 899 (1st Cir. 1984). 
The court in the second case may examine the full record in the
earlier one to decide "whether a rational jury could have grounded
its verdict upon an issue other than that which the [moving party]
seeks to foreclose from consideration." Ashe v. Swenson, 397 U.S.
436, 444 (1970).
 Whether the jury did find, or must have found, rape in
the earlier trial is perhaps a question of fact. But where (as
here) the question is answered by looking only at the paper record
of the earlier trial, appeals courts tend to review the district
court ruling de novo. The more difficult threshold issue is how
clear it must be that the jury found the fact in question. The
maxim of Lord Coke which is sometimes quoted by courts is that "an
estoppel must 'be certain to every intent.'" Russell v. Place, 94
U.S. 606, 610 (1876).
 This is more demanding than the "more likely than not"
standard commonly applied in civil matters, but sensibly so. 
Telling a party that it cannot prove or contest a fact of
importance in the case at hand is a severe measure. Courts have
been willing to take that step only where it is certain that the
issue has already been decided in a prior case (normally one
involving the same parties), and even then there are numerous
escape hatches). Restatement, supra, 27.
 Confronted with a general verdict in the earlier case,
courts commonly ask whether a finding was "necessary" to the
judgment, and answer the question by looking primarily to the
instructions and the result. But a finding is "necessary" if it
was central to the route that led the factfinder to the judgment
reached, even if the result "could have been achieved by a
different, shorter and more efficient route." Commercial
Associates v. Tilcon Gammino, Inc., 998 F.2d 1092, 1097 (1st Cir.
1993). And in deciding whether the jury did make and rest
centrally upon a finding not expressly made, it is proper to
consider--as Dennis said--not only what was "logically" but also
what was "practically" a "necessary component of the decision
reached." Dennis, 744 F.2d at 899.
 Here, the rape charges were the centerpiece of Jennifer
Hoult's case. In the opening statement, her counsel said that
Jennifer Hoult would have to live with her "memories of the rape,
torture, and sexual abuse" by her father and that her father had
had "intercourse" with her. Defense counsel answered that Jennifer
Hoult could not have been "raped by her father some 3,000 times,"
as she had once claimed, and he promised evidence to show the
unlikelihood that numerous rapes could have occurred without
detection by other family members.
 Jennifer Hoult then testified specifically to five
incidents of rape and said that there were other like rapes whose
details she could not recollect. On cross-examination by defense
counsel, she said:
 I know based on the specific memories
 that I have of him attacking me and based on
 my perceptions, and memories of my life as a
 whole that he assaulted me regularly, and that
 rape, even the narrower definition [simple
 sexual intercourse] was a regular part of the
 way that he assaulted me.

 In closing argument, defense counsel--who argued first--
said at the outset:
 Specifically, Jennifer alleges that her father
 sexually abused her. More specifically,
 Jennifer claims that her father raped her, and
 I will call your attention now, as I did in my
 opening statement, that Jennifer describes
 rape as forcible vaginal intercourse.

In response, Jennifer Hoult's counsel said: "And this is not about
hugging and kissing. She is claiming he assaulted her. He raped
her. It's not inappropriate hugging and kissing."
 A further consideration, stressed by the district court,
is Dr. Brandt's testimony and the jury's finding on the statute of
limitations. Dr. Brandt testified that repeated sexual abuse can
cause repression of memory of the abuse and that Jennifer Hoult"s
symptoms "correlated" with such a syndrome. In finding that the
statute of limitations had run, the only plausible explanation is
that the jury accepted Jennifer Hoult's testimony as to the rapes,
which were the salient and specific acts of repeated abuse to which
she testified.
 Theoretically, the jury could have concluded that
Jennifer Hoult had made up or imagined the rapes, and it could then
have found repressed memory and awarded the $500,000 judgment
because of improper sexual fondlings and threats or acts of
violence. But this is a wholly unrealistic assessment of a trial
in which the rapes were the central and pivotal issue, the
fondlings were the preface to the rapes, and the violence was
connected to the rapes (either as part of the rapes or to encourage
silence). In our view the jury necessarily decided that rapes had
occurred.
 The present law suit seeks, in the guise of a defamation
action, to retry the central issue in the prior assault case
between the same litigants. That issue--ultimately a credibility
contest between the two opposing parties--was resolved by the jury
at the first trial. Whether the jury was right or wrong, its
decision about what happened is not now open to relitigation.
 Affirmed.