In re Jack MARKARIAN, Debtor.

The Aetna Casualty and Surety Company, Plaintiff/Appellee,

v.

Jack Markarian, Defendant/Appellant.

BAP No. MW 96–031.
Bankruptcy No. 95–40961–JFQ.
Adversary No. 95–4130–JFQ.

United States Bankruptcy Appellate Panel of the First Circuit.

Oct. 28, 1998.

Order Denying Motion to Vacate
Nov. 20, 1998.

See also 43 F.3d 1546.

Kenneth R. Berman and John C. La Liberte on brief for Appellant.

Howard S. Veisz, David S. Douglas, and Gregg Kanter on brief for Appellee.

Before GOODMAN, VAUGHN and CARLO, U.S. Bankruptcy Judges.

VAUGHN, Bankruptcy Judge.

This opinion is the second in what has become an extensively litigated issue spanning approximately nine years. We see no need to reiterate a majority of the facts involved and refer interested parties to the facts set forth in this Panel's first opinion dated May 13, 1997. *See Aetna Cas. and Sur. Co. v. Markarian (In re Markarian)*, 208 B.R. 249 (1st Cir. BAP 1997). This opinion is the Panel's second in relation to this matter, which, to the extent it is inconsistent as indicated herein, supersedes the first opinion dated May 13, 1997. The Bankruptcy Appellate Panel has jurisdiction over this appeal pursuant to 28 U.S.C. § 158. We review findings of fact for clear error and conclusions of law *de novo*. FED. R. BANKR. P. 8013; *Piccicuto v. Dwyer*, 39 F.3d 37, 40 (1st Cir.1994).

## I. *Issues on Rehearing.*

### A. *The Appellant.*

The Appellant moved for rehearing on the following two issues:

A. Whether this matter should be remanded with instructions to enter summary judgment for Markarian on the issue of nondischargeability;

B. If this Court's remand is not for the entry of summary judgment for Markarian on the issue of nondischargeability, whether (on remand) Markarian is entitled to a ruling that actual fraud by Markarian has not been established under principles of collateral estoppel.

Mot. of Debtor/Appellant Jack Markarian for Reh'g at 1–2. As grounds for his motion, the Appellant averred that the record does not show what damages resulted from his individual acts of fraud. He states that he is entitled to summary judgment because (1) the Appellee failed to present evidence illuminating how the Appellant proximately caused the Appellee's losses; and (2) this issue of proximate cause was an essential element of the Appellee's case seeking to except the judgment against the Appellant from discharge.

As further grounds for his motion, the Appellant avers that the Appellee, The Aetna Casualty and Surety Company ("Aetna"):

is not entitled to invoke collateral estoppel against Markarian on the issue of actual fraud because the jury was permitted to find Markarian liable for fraud on instructions covering aiding and abetting and because the First Circuit on direct appeal held that a finding that Markarian committed fraud was not essential to the judgment.

Mot. of Debtor/Appellant Jack Markarian for Reh'g at 2.

In support of the first assertion on proximate cause, the Appellant asserted that the Appellee bore the burden of proof on each issue; thus, Aetna should have shown the "extent to which money was obtained by . . . actual fraud." Mot. of Debtor/Appellant Jack Markarian for Reh'g at 5 (internal quotations omitted).

In support of his second assertion, the Appellant cites 18 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE, § 4421, at 205 (1981), for the proposition that once an appellate court has affirmed on one ground and passed over another, preclusion does not attach to the ground omitted from its decision. Mot. of Debtor/Appellant Jack Markarian for Reh'g at 8. Further, the Appellant refers to the First Circuit's opinion that affirmed the District Court's opinion. *See Aetna Cas. Sur. Co.,* 43 F.3d 1546 (1st Cir.1994).

In the unpublished portion of *Aetna Cas. Sur. Co.,* the Circuit Court found that it was sufficient if the jury inferred that the Appellant "aided and abetted another Arsenal defendant in the commission of two acts of mail fraud." Mot. of Debtor/Appellant Jack Markarian for Reh'g at 8.[1] Thus, the Appellant wishes this Panel to adopt his reasoning that the First Circuit found it unnecessary whether the Appellant committed actual fraud or made a false representation, since it affirmed specifically on grounds of aiding and abetting, rather than on the basis that the Appellant committed mail fraud as a principal. In this sense, the Bankruptcy Court could not have granted summary judgment on the grounds of collateral estoppel, because the fourth element of the doctrine is that "the determination of the issue must have been

---

1. The Appellant, in his brief, cites to page 577 in Record Appendix Volume II submitted to the Panel. Without entering into a discussion whether this case is a sufficiently "related case" such that we may cite to the unpublished opinion, *see* 1ST CIR. R. 36.2(b)(6) ("Unpublished opinions may be cited only in related cases. Only published opinions may be cited otherwise."), we note that the cite on page 577 is not included in the published opinion, but is included in the slip opinion *Aetna Cas. Sur. Co. v. P & B Autobody,* Nos. 93–1877, 83–1878, 93–1879, 93–1880, 93– 1881, 93–2209, 93–2300 and 93–1903, slip op. (1st Cir. Dec. 29, 1994) (partially not for publication). In the slip opinion, section V, "Unfair Trade Practices: Mass. Gen. L. Ch. 93A," runs from pages 547 to 548 and is included in its entirety in the published opinion. *See Aetna Cas. Sur. Co.,* 43 F.3d at 1566. Page 577, however, is part of section XIV, "Sufficiency of Evidence," which is not included in the published opinion. The published opinion only runs to section IX before the conclusion. *Aetna Cas. Sur. Co.,* 43 F.3d 1546 (1st Cir.1994).

essential to the judgment." *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994). *See also Reynolds–Marshall v. Hallum*, 162 B.R. 51, 55 (D.Me.1993); *Sack v. Friedlander (In re Friedlander)*, 170 B.R. 472, 476 (Bankr.D.Mass.1994).

### B. *The Appellee.*

The Appellee, on the other hand, argues that the record contains sufficient findings of fraud, other than the jury's finding of actual fraud, to affirm the Bankruptcy Court's decision in favor of collateral estoppel. Specifically, the Appellee states:

> Markarian's participation in the fraudulent scheme was not lost on the First Circuit, which in affirming the Judgment in its entirety, devoted no less than six pages of its decision to the evidence demonstrating Markarian's personal involvement in the fraud conspiracy. As the First Circuit's opinion emphasized, the evidence supported findings that Markarian had participated in the fraudulent scheme, was a member of the conspiracy, had engaged in deceptive acts and practices, and had made, at a minimum, various misrepresentations with regard to the 1976 Rolls Royce and in his dealings with Aetna appraisers.

Br. of Pl./Appellee The Aetna Casualty and Surety Company in Opp'n to Debtor/Appellant Jack Markarian's Mot. to [sic] for Reh'g and Reargument at 2–3 ("Appellee's Brief").

In addition, the Appellee asserts that— were the Panel to remand this matter to the Bankruptcy Court—summary judgment could be granted under section 523(a)(6).[2] Appellee's Br. at 8; *see* 11 U.S.C. § 523(a)(6) (1988) (a debt resulting from the "willful and malicious injury by the debtor to another entity or to the property of another entity" will not be excepted from the debtor's discharge).

Finally, the Appellee emphasizes that, although the First Circuit affirmed the District Court's decision on aiding and abetting grounds, the First Circuit made certain factual findings which should be given collateral estoppel effect. Appellee's Br. at 12–14.

The Appellee also proffers policy considerations as to why this judgment debt should not be discharged. One such consideration contained in its brief is that "Congress clearly could not have intended for conspirators to deluge the bankruptcy courts with filings seeking to use the Bankruptcy Code to evade their conspiracy liability and thereby raise the prospect of inconsistent judgments." Appellee's Br. at 12.

## II. *Discussion.*

### A. *The Appellant's Proximate Cause Argument.*

The Appellant argues that the Bankruptcy Court should have granted him summary judgment, rather than granting it for the Appellee, because the Appellee's case lacked proof of an essential element: to what extent the Appellant's fraudulent conduct proximately caused the Appellee's damages. In short, if this debt on account of fraud will be excepted from discharge, at the very least the Appellant only wants to pay for his wrongdoing, not the wrongdoing of his co-defendants.

In our May 13, 1997 opinion, we stated that "[t]he district court judgment makes no delineation between damages incurred by Aetna on account of the Arsenal defendants and damages incurred by Aetna on account of other defendants." *Aetna Cas. and Sur. Co.*, 208 B.R. at 254. However, we vacate this portion of our previous opinion and affirm the Bankruptcy Court's opinion holding the Appellant liable for the full amount. The District Court, indeed, contained a delineation: the jury verdict. Thus, we refer to the specific jury findings of joint and several liability for each of the defendants. The jury in the District Court case did not hold some of the defendants less accountable than others, or find some of the defendants less blameworthy than others. Quite the opposite: if the jury had any books to throw, these were most decidedly thrown at the Appellant.

However, the Appellant stresses that "it cannot be concluded from the jury form that the jury found Markarian [the Appellant] had

---

**2.** This is it not relevant since this appeal is predicated on section 523(a)(2)(A).

made a false representation or that Markarian's conduct, whatever it was, proximately caused a loss to Aetna." Mot. of Debtor/Appellant Jack Markarian for Reh'g at 7. The Appellant points out, in support of this assertion, that because Judge Young instructed the jury on actual fraud and aiding and abetting, that the jury might not have found the Appellant liable of the kind of fraud sufficient to support a finding of collateral estoppel for the purposes of section 523(a)(2)(A).

■ To reiterate, section 523(a)(2)(A) does not "discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by ... false pretenses, a false representation, or actual fraud ...." 11 U.S.C. § 523(a)(2)(A) (1988). Thus, for the reasons that follow, we find that the Appellant, as an individual, committed fraud within the meaning of section 523(a)(2)(A).

First, for the Appellant to construct an argument on what the jury thought when it found the Appellant liable on every count is specious and irrelevant at best. The jury, after a six-week trial, found the Appellant individually liable on far greater grounds than the lesser standard of "false pretenses," § 523(a)(2)(A), sufficient to sustain a finding of nondischargeability within section 523(a)(2)(A). Specifically, the jury found the Appellant liable of common-law fraud, chapter 93A fraud, RICO fraud with Aetna as the enterprise, RICO fraud with Arsenal as the enterprise, conspiracy, and RICO conspiracy. R. at 454.

Moreover, the Appellant's liability is joint and several. The jury form listed each defendant separately, and each defendant could have been found not liable, including the Appellant. *See* R. at 449–54, 470–76. Certainly, if the jury had decided that any particular defendant was innocent, the jury could have checked "not liable" for that person. Regarding the Appellant, the jury found him liable on every count, checking every liability blank available. R. at 454. Indeed, the jury also, as part of his chapter 93A violation, penalized him the maximum allowable amount. R. at 454. The jury's findings are a clear indication of the people's decision to hold the Appellant individually liable for five types of fraud.

Second, we find that the First Circuit's opinion included sufficient findings of individual fraud on the part of the Appellant.[3] Under Part III of the First Circuit's opinion entitled "Sufficiency of Proof," the First Circuit made the following findings. On page 1560 of its opinion, it stated:

[t]he elements of a mail fraud violation are a scheme to defraud and the use of the mails to execute or further this scheme. The plaintiff alleged that *each* defendant committed predicate acts of mail fraud.

The intentional filing of false insurance claims or false completed work forms in order to obtain payments from Aetna constitutes a "scheme to defraud" Aetna. The plaintiff does not need to prove that each defendant personally used the mails but only that the defendant acted "with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can be reasonably foreseen." In this case, it could reasonably be foreseen by each defendant that either an insured, a claimant, a body shop or an appraiser would use the mails in connection with each of the fraudulent claims, or that Aetna would use the mails to send payments to the recipients. All of these uses of the mails were in furtherance of the defendants' fraudulent scheme.

3. In its background summary, the First Circuit stated:

The jury found that each of the individual Arsenal defendants was liable for a substantive RICO violation under § 1962(c) for participating in the affairs of Aetna through a pattern of racketeering activity. The jury also found all of the individual Arsenal defendants liable, under § 1962(d), for RICO conspiracy with the adjusters and the operators of other body shops (not including Betty Arhaggelidis).

*Aetna Cas. Sur. Co.*, 43 F.3d at 1552–53. For the Supreme Court's most recent discussion on conspiracy, see *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) ("Even if Salinas did not accept or agree to accept two bribes, there was ample evidence that the sheriff committed at least two predicate acts when he accepted numerous bribes and that Salinas knew about and agreed to facilitate the scheme, and this is sufficient to support Salinas' conviction under § 1962(d).").

*Aetna Cas. Sur. Co.,* 43 F.3d at 1560 (emphasis added) (internal citations omitted). On page 1561, it stated "[t]he appellants simply contend that there was no evidence of fraud on the part of any of the appellants. We have concluded that this assertion is contrary to the record." *Id.* at 1561. On page 1563, it stated "[f]rom evidence of the extensive dealings of all other appellants with Cummings and Dexter, the jury could have inferred an agreement, to defraud Aetna, among all of the Arsenal defendants ... and the appraisers." *Id.* at 1563. On page 1566, in discussing the unfair trade practices count, Massachusetts General Laws chapter 93A (Part V of the First Circuit's opinion), it found "[u]nder Massachusetts law, 'unfair and deceptive acts or practices' include acts of fraud. We conclude that the evidence was ample to support findings of fraudulent practices by these three defendants." *Id.* at 1566 (referring to Zareh Tirinkian, Peter Markarian, and the Appellant herein, Jack Markarian). These jury findings, that the First Circuit affirmed, were on the part of each individual defendant.

At any rate, section 523(a)(2)(A) may include debts which arise from the wrongful acts of conspirators and their co-conspirators. *See Compugraphic Corp. v. Golden (In re Golden),* 54 B.R. 957, 963, 965 (Bankr. D.Mass.1985) (After holding a debt to be excepted from discharge under section 523(a)(2)(A) where the debtor procured and overpaid outside contractors under a scheme whereby he received kickbacks from these contractors of the "wrongfully diverted corporate funds," the court added "[i]n short, while Golden was the direct beneficiary of a component of the scheme, he was an indirect beneficiary of the entire illicit relationship with Data and Traganos."); *Pisano v. Ver-*

*don (In re Verdon),* 95 B.R. 877, 882 (Bankr. N.D.N.Y.1989) (Although the evidence did not support a finding of a scheme, the court earlier stated that "[t]he only way the $15,000 can be determined nondischargeable ... is if ... the Debtor's own actions, individually or in concert with those of her daughter's and son-in-law's under conspiracy *or* agency principles, satisfy the elements of Code § 523(a)(2)(A) ....") (emphasis added); *Zervas v. Nix (In re Nix),* 92 B.R. 164, 171–72 (Bankr.N.D.Tex.1988) (in a case quite similar to the one at bar, although ultimately deciding the case under section 523(a)(6), the court stated "[i]n the present case, it would be appropriate to give collateral estoppel effect to the jury's factual determinations ... that [the] Debtor made false pretenses, false representations and committed statutory fraud") *(citing In re Suter,* 59 B.R. 944 (Bankr. N.D.Ill.1986) ("where the court stated that the elements of fraud encompassed in that District Court's finding of fraud under RICO were identical to those required for a finding of nondischargeability under § 523(a)(2)(A)")); *MacDonald v. Buck (In re Buck),* 75 B.R. 417, 420–22 (Bankr.N.D.Cal. 1987) (Stating "a debtor who has made no false representation may nevertheless be bound by the fraud of another if a debtor is a knowing and active participant in the scheme to defraud[,]" the court found the debtor's debt excepted from discharge because she was a "knowing, active participant" in her husband's scheme to defraud investors)*(citing* 3 COLLIER ON BANKRUPTCY ¶ 523.08[4] at 523–49 (15th ed.1979); *Amen v. Black,* 234 F.2d 12 (10th Cir.1956); *Matter of Newmark,* 20 B.R. 842 (Bankr.E.D.N.Y.1982)).[4] The Appellant's own brief reiterates co-conspirator liability.[5] The jury found, which the

---

4. Though unpublished, we also note that Judge Hillman, as part of a ruling in a related case, has stated:

> [l]ooking at (a)(2)(A), it's the debtors' argument that only a portion of the debt is non-dischargeable, and I must analyze this large judgment and determine to what extent these debtors were the perpetrators of the particular acts which are included in the omnibus RICO judgment. The contention is that you cannot use conspiracy theories, any kind of combination theory, to assess against one individual some-

> thing that was not physically done by that individual. I don't think that's good law at all. R. App. Volume III; Tr. At 23, *Aetna Cas. & Sur. Co. v. Zareh and Lena Tirinkian (In re Zareh and Lena Tirinkian),* Nos. 95–12040, 95–18668 (Bankr.D.Mass. Apr. 24, 1996).

5. This portion is verbatim from the Appellant's brief:

> The spreading of liability to each member of the conspiracy for the acts of every conspirator is done for policy reasons to discourage involvement in conspiracies. *Halberstam v. Welch,* 705 F.2d 472, 489 (D.C.Cir.1983).

First Circuit recapped in over six pages of its opinion, that the Appellant was an active and knowing participant in a conspiratorial scheme to defraud the Appellee. R. at 454; *see also Aetna Cas. Sur. Co.*, 43 F.3d at 1560–66; *United States v. Barker Steel Co.*, 985 F.2d 1123, 1128–29 (1st Cir.1993) ("It is well settled that members of a conspiracy are legally responsible for the actions of a co-conspirator taken in furtherance of the scheme.") (*citing Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *United States v. Baines*, 812 F.2d 41, 42 (1st Cir.1987); *United States v. Fusaro*, 708 F.2d 17, 21 (1st Cir.1983)).

Therefore, we affirm the Bankruptcy Court's opinion on the findings of fraud and vacate our previous opinion remanding this portion of the matter for a finding of proximate cause.

## B. *Findings Essential to the Judgment.*

■ The Appellant's point of contention on rehearing regards the fourth element of the doctrine of collateral estoppel. As a recap, we restate the doctrine of collateral estoppel which requires the moving party show that:

1. the issue sought to be precluded must be the same as that involved in the prior action;

2. the issue must have been actually litigated;

3. the issue must have been determined by a valid and binding final judgment; and

4. the determination of the issue must have been essential to the judgment.

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir.1994); *see also Piccicuto*, 39 F.3d at 40 ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). In our May 13, 1997 opinion, we found that all four elements of collateral estoppel had been met. *See Aetna Cas. and Sur. Co.*, 208 B.R. at 252.

In Part XIV(A)(3), the First Circuit specifically discusses the sufficiency of the evidence to support the RICO offenses of the Appellant herein. After thoroughly reviewing the evidence against the Appellant, the First Circuit found that it supported the finding of at least two acts of mail fraud which constituted the predicate acts necessary for the RICO conviction. The Appellant argues that all the Circuit Court found was that the Appellant aided and abetted the commission of mail fraud and that aiding and abetting is not actual fraud as contemplated by section 523(a)(2)(A). However, as the Circuit Court stated, aiding and abetting is a violation of section 1341, the mail fraud statute itself. The Appellant would have the Panel find that a conviction on mail fraud is insufficient to find an exception to discharge under section 523(a)(2)(A). We decline to make this finding.

In *Commercial Assocs. v. Tilcon Gammino, Inc.*, the Circuit Court explains that the reasons for the requirement that an issue be "necessarily decided" is that "a collateral issue, although it may be the subject of a

---

Thus, one who is a member of a conspiracy is civilly liable for all of the frauds committed by every member of the conspiracy, regardless of whether he knows about them, whether he knows who is committing them, whether he intends them to happen, whether he plans or knows about the injurious actions or knows the extent of the conspiracy, whether the frauds occur before he joins the conspiracy or after he quits it (unless he makes known to the other conspirators his withdrawal from the conspiracy), whether he actively participated in or benefitted by the particular acts resulting in injury, or whether his own particular contribution to or involvement in the conspiracy proximately caused anyone harm. *Id.* at 479–81 (collecting cases); *Bridge C.A.T. Scan Associates v. Ohio-Nuclear Inc.*, 608 F.Supp. 1187, 1191

(S.D.N.Y.1985) (conspirator is liable for acts of other members of conspiracy as if they were his own, whether his role is minor or major, limited or slight); *Martineau v. Foley*, 231 Mass. 220, 223, 120 N.E. 445 (1918) (participant in conspiracy is liable irrespective of degree of his activity in wrongful act); 16 Am. Jur.2d, *Conspiracy* §§ 50, 56 (1979) (civil conspiracy itself may be of no consequence except as bearing on determination of who is liable; each member of conspiracy is liable for acts of all, regardless of whether member's involvement was prominent or inconspicuous). Br. of Debtor/Appellant Jack Markarian at 16–17. The Panel notes, however, that the First Circuit cited numerous individual acts by the Appellant in furtherance of the conspiracy. *See* discussion *supra* Part II.A.

finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to litigate the issue fully since it is not determinative. Under these circumstances, extending the force of the unnecessary finding into a different case is deemed too risky and possibly unfair." *Commercial Assocs. v. Tilcon Gammino, Inc.*, 998 F.2d 1092, 1097 (1st Cir.1993). The Circuit Court further stated that "[i]f a factual issue was vigorously litigated in a prior proceeding and w[as] the focus of the court's decision, preclusion might well be appropriate even if in hindsight it could be shown that the issue was, in some sense, not strictly essential to the outcome. After all, a factual determination is not inherently untrustworthy just because the result could have been achieved by a different, shorter and more efficient route." *Id.* What is distinguishable between *Commercial Assocs.* and the instant case, however, is that the thrust of the Circuit Court's concern in *Commercial Assocs.* was whether the District Court of Rhode Island

> failed to give proper preclusive effect to the Rhode Island Superior Court's finding that DelVicario was acting as an agent of Lechmere and as such bound Lechmere to the oral contracts with Tilcon.... The Rhode Island Superior Court states that DelVicario was an agent of Lechmere only at one point in its 28–page decision, and there only in passing, somewhat cryptically and without any explanation or analysis.... We conclude that this "finding" was collateral and not preclusive ....

*Id.* at 1097–98. Further, the Circuit Court stated, "[i]n this case, however, the single sentence in question seems to us to fall within the principle that 'if an inquiry reveals that the matters had "come under consideration only collaterally or incidentally," preclusion is denied.'" *Id.* at 1097 (citing WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE § 4421, at 194) (quoting *Norton v. Larney*, 266 U.S. 511, 517, 45 S.Ct. 145, 69 L.Ed. 413 (1925)); *see also* WRIGHT, MILLER & COOPER, *supra* § 2735, at 286.

■ In the instant case, we are not asked to consider whether a District Court properly gave preclusive effect to state court findings.

Rather, the Appellant argues that we should forget the jury verdict in the District Court case and focus only on what the First Circuit found because the First Circuit affirmed on lesser grounds, and those supersede the District Court case. We do not think that this is the policy behind giving preclusive effect to previously litigated cases. At any rate, the First Circuit did not "consider[ ] only collaterally or incidentally," *Norton*, 266 U.S. at 517, 45 S.Ct. 145, the Appellant's District Court case and the fraud under which he was charged and found liable. The Circuit Court's recital of the Appellant's fraudulent conduct underscores this fact. *See* discussion *supra* Part II.A (citing to various pages in *Aetna´ Cas. Sur. Co.*, in which the First Circuit noted several of the Appellant's individual, fraudulent acts).

It is unclear to this Panel why the First Circuit affirmed the District Court's opinion on more narrow grounds than what was covered over the course of the trial. However, we do not feel that the First Circuit specifically passed on affirming on the other counts of fraud for lack of merit; at the very least, it appears that the Circuit Court found that, given so much fraud in the case below, and given such a voluminous record, it only needed to affirm on certain grounds. This is not to say that there are an insufficient amount of findings of fraud included in the First Circuit's decision to support our decision affirming the Bankruptcy Court's summary judgment opinion on the grounds of collateral estoppel. Indeed, there are plenty.

However, before we further discuss other First Circuit findings than those mentioned above, *see* discussion *supra* Part II.A, we note that the District Court clearly instructed the jury on the issue of fraud. Specifically, the District Court stated:

> *Aetna makes claims of fraud, charges of fraud.* And that's the charge that is probably *the most frequent charge* made here. So let me explain to you what Aetna has to prove in order to prove—and *you have to keep each individual and each person, and each company separate* ....
>
> First, that the person made a statement of material fact. That means that the person said something that made some

difference, that that was germane to an issue between the person and Aetna, something that was significant as between the person as Aetna. Second that that statement of material fact was false, untrue.

Third, that the person making it knew it was untrue, knew that they were making a false statement of material fact. Now we're talking about a specific intent in the person's mind, a specific knowledge that they knew that what was being said was untrue and they made it intending that Aetna would rely on it. That Aetna would take the statement as true, even though they knew it was false. So understand, we're not talking about carelessness or sloppiness or negligence here, *we're talking about fraud,* a statement of material fact that's false, made by the person knowing that it's false, with the intent that Aetna rely on it. Then there is [sic] two more things: [t]hat Aetna actually did rely on it; that Aetna acted with respect to it in reliance upon the statement.

And lastly, the fifth point, that somehow that damaged Aetna. The most common way would be Aetna paid a claim, Aetna paid out money. But any damage to Aetna will do.

A statement of material fact, one; that's false, two; made with the intent that Aetna be deceived, three; four, Aetna is deceived; five, Aetna loses money or property.

. . . .

Mail fraud consists of any scheme or artifice designed to obtain from another person money or property which the schemer has no right to. . . .

. . . .

Now, if they prove an act of racketeering activity, mail fraud by the law is an act of racketeering activity, that's not enough. They have to prove a pattern of racketeering activity. . . .

. . . .

So I've told you what the mail fraud is, racketeering activity, I've told you there has to be a pattern. It means this, there has to be at least two acts, the person either himself or herself or as an accomplice, has to have done two acts of racke-

teering activity within a ten-year span. And even that's not enough. These acts have to form a pattern. . . .

. . . .

As I understand it, though I've been careful to detail for you now all the different claims that are made, and I don't in any way take away from any of those claims that I'm not going to mention now, Aetna's, *most of Aetna's claims are either claims of fraud, which then lead them into Chapter 93A violations or claims of mail fraud which lead them into these racketeering claims. Fraud touches a number of Aetna's claims* . . . .

. . . .

R. at 408–09, 420–22, 427, 428 (underlined emphases added). Given the instructions noted above, the fact that the jury returned a liability verdict on every count against the Appellant, and the First Circuit's findings noted in Part II of this decision, *see* discussion *supra* Part II.A, we believe there is sufficient proof to affirm the Bankruptcy Court's decision.

However, we again note further Circuit Court findings which supplement our decision today. For example, the Circuit Court stated "we find that the evidence was sufficient for the jury reasonably to find liability on both Count VIII (the RICO substantive violation with Aetna as the enterprise) and Count IX (the RICO conspiracy)." *Aetna Cas. Sur. Co.,* 43 F.3d at 1553. In addition, on page 1556, the Circuit Court concluded "that the verdicts and judgment for plaintiff against the appellants are supported by the evidence received in this case, and by law." *Id.* at 1556. Further, the Circuit Court found that the "Appellants' activities caused Aetna employees having authority to do so to direct that other employees make payments Aetna otherwise would not have made . . . [which was] sufficient to support a finding that each of the appellants participated in the conduct of Aetna's affairs in this way." *Id.* at 1559–60 (discussing the RICO violation under § 1962(c) with Aetna as the enterprise).

The Circuit Court continues on, stating "the evidence supports a finding that appel-

lants caused the Aetna appraisers to approve false claims and conduct their appraisals in a manner contrary to Aetna's business practices and caused Aetna to pay out large sums of money on false claims." *Id.* at 1560. Also,

> In this case, it could reasonably be foreseen by each defendant that either an insured, a claimant, a body shop or an appraiser would use the mails in connection with each of the fraudulent claims, or that Aetna would use the mails to send payments to the recipients. All of these uses of the mails were in furtherance of the defendants' fraudulent scheme.

*Id.* at 1560–61. Immediately following the one sentence that, it appears, the Appellant hangs his hat on, "[i]t is true that the jury's findings with respect to the seventeen other insurance claims were not essential to the judgment entered on the verdict," *id.* at 1565, is the rest of this paragraph:

> We note, however, that an argument can be made, although the appellee does not advance it on appeal (and need not do so in

view of other findings), that each of these claims, if found to constitute mail fraud, would constitute a predicate act for the purposes of Count VI, the substantive RICO violation with Arsenal Auto as the enterprise. . . . In considering the sufficiency of the evidence, we need not address the merits of such an argument because even when limiting the scope of our review of the evidence to the sixteen Aetna insurance claims, *we find that there was sufficient evidence to support the finding that each of the Arsenal defendants violated RICO § 1962(c) by committing two related, predicate acts of mail fraud.*

*Id.* at 1566 (emphasis added).[6]

We cite to all these passages, and there are more,[7] to demonstrate that, although in the following section the First Circuit affirmed the jury verdict finding the Appellant liable under chapter 93A,[8] its decision does not necessarily nullify the collateral estoppel effect of the laundry list of factual findings regarding the Appellant's individual, fraudu-

---

**6.** We note another recent First Circuit case, in which the Circuit Court stated:

> To prove mail *or* wire fraud, plaintiffs must show three elements: a "scheme to defraud," Volvo's "knowing and willful participation in the scheme with the intent to defraud," and the use of the mails or interstate wire or radio communication in furtherance of the scheme. *United States v. Cassiere,* 4 F.3d 1006, 1011 (1st Cir.1993). The conduct must "be intended to *deceive* another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir.), *cert. denied,* 498 U.S. 992, 111 S.Ct. 536, 112 L.Ed.2d 546 (1990).
> . . . .
> We must determine whether the evidence presented as to at least one of the five frauds is sufficient to support the verdict.

*Bonilla v. Volvo Car Corp.,* 150 F.3d 62, 66 (1st Cir.1998) (first emphasis added). Further, the Circuit Court stated:

> The question, then, is whether Trebol's sale of the car *with no affirmative false statement as to where the accessories were installed* could be treated as fraud. At the core of the issue is how fraud is to be defined.
> . . . . At common law, fraud doctrine did not impose any broader, general duty to disclose, *see Chiarella v. United States,* 445 U.S. 222, 228, 100 S.Ct. 1108, 63 L.Ed.2d 348 (1980), but it is settled that the mail and wire fraud statutes go somewhat beyond the common law,

*see McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.,* 904 F.2d 786, 791 (1st Cir.1990). Thus, a leading commentary on federal jury instructions says that even where there is no falsehood or half truth:

> > [T]he failure to disclose information may also constitute a fraudulent representation [under the mail and wire fraud statutes] if the defendant was under a legal, professional or contractual duty to make such a disclosure . . . . 2 Sand, Siffert, Loughlin & Reiss, *Modern Federal Jury Instructions,* ¶ 44.01, at 44–11 (1997).

*Id.* at 69–70.

**7.** The Circuit Court also concluded that "the evidence is sufficient to support a finding that each of the appellants 'knowingly joined' the § 1962(d) RICO conspiracy." *Aetna Cas. Sur. Co.,* 43 F.3d at 1562. Further, it stated:

> To prove a violation of § 1962(d), it is enough to prove that a defendant agreed with one or more others that two predicate offenses be committed. *See Boylan,* 898 F.2d at 252. In the present case, this latter difference is of no practical consequence because we conclude that there was sufficient evidence to support a finding that each defendant in fact committed two predicate offenses.

*Id.* at 1562.

**8.** Section V is captioned "Unfair Trade Practices: Mass. Gen. L. Ch. 93A." *Aetna Cas. Sur. Co.,* 43 F.3d at 1566–67.

lent actions. *See Commercial Assocs.,* 998 F.2d at 1097 ("If a factual issue were vigorously litigated in a prior proceeding and were the focus of the court's decision, preclusion might well be appropriate even if in hindsight it could be shown that the issue was, in some sense, not strictly essential to the outcome."); *Ritter v. Mount St. Mary's College,* 814 F.2d 986, 994 (4th Cir.1987) ("The collateral estoppel doctrine is a judge-made rule, capable of flexible interpretation to serve the interests of judicial economy by preventing needless re[-]litigation."); *Markoff v. New York Life Ins. Co.,* 530 F.2d 841, 842 (9th Cir.1976) ("Even if the appellate court refrains from considering one of the grounds upon which the decision below rests, an affirmance of the decision below extends legal effects to the whole of the lower court's determination, with attendant collateral estoppel effect."); *Sheldon Co. Profit Sharing Plan and Trust v. Smith,* 858 F.Supp. 663, 669 (W.D.Mich.1994) ("Plaintiffs' theory [which the court rejected] would deny preclusive effect to all factual findings that serve as alternative grounds for a judgment.") (internal citations omitted).

This case as a whole is not in danger of what is the focus of the doctrine of preclusive effect: "a collateral issue, although it may be the subject of a finding, is less likely to receive close judicial attention and the parties may well have only limited incentive to litigate the issue fully since it is not determinative." *Commercial Assocs.,* 998 F.2d at 1097. To be sure, this case has been litigated fully.

Thus, we find that the doctrine of issue preclusion does not preclude a finding of "false pretenses, a false representation, or actual fraud," § 523(a)(2)(A), from the findings in this matter. *See Grella,* 42 F.3d at 30–31 ("An issue may be 'actually' decided even if it is not *explicitly* decided, for it may have constituted, logically or practically, a necessary component of the decision reached in the prior litigation."). We thus reject the Appellant's contention that of all the arrows shot in the District Court and the First Circuit cases, which have landed on every imaginable legal theory available, all have failed to hit section 523(a)(2)(A)—especially when the Appellant was found liable by a jury on every count brought against him in District Court and where the First Circuit affirmed that decision.

The Appellant would have this Panel go round and round and acknowledge some type of loophole to allow him to force a trial, or even more absurd still, a grant of summary judgment in his favor. We strongly disagree that because the First Circuit affirmed Section V on grounds that were less than the grounds included in the jury verdict, the Circuit Court necessarily found those grounds *unnecessary* to an affirmance on fraud. Unfortunately, "[t]he clearer a thing is, the more difficult it is to find any express authority or any dictum exactly to the point." *In re A. Cardi Constr. Co., Inc.,* 154 B.R. 403, 406 (Bankr.D.R.I.1993) (*citing Panama & So. Pac. Tel. Co. v. India Rubber, etc., Co.,* 10 Ch.App. 515, 526 (1875)). In sum, the Panel holds that the finding of actual fraud by the jury in the District Court, together with the First Circuit's affirmance and the facts of this case, have sufficient trustworthiness to form the basis for a finding of collateral estoppel.

### III. *Damages.*

In March of this year, the United States Supreme Court decision in *Cohen v. De La Cruz,* 523 U.S. 213, 118 S.Ct. 1212, 1215, 140 L.Ed.2d 341 (1998) held that section "523(a)(2)(A) prevents the discharge of all liability arising from fraud, and that an award of treble damages therefore falls within the scope of the exception." *See also Big River Properties, Inc. v. Stafford (In re Stafford),* 223 B.R. 94 (Bankr.N.D.Miss.1998) (Texas state court judgment of $500,000 in actual damages and $3.6 million in ancillary and punitive damages were excepted from discharge under the doctrine of collateral estoppel, since these damages were "any liability" arising from the debtor's actual fraud). In light of that decision, we vacate the portion of our March 17, 1997 opinion remanding the adversary proceeding to the Bankruptcy Court for a finding of actual damages. Under *Cohen, all* liability arising from the Appellant's fraud is excepted from discharge; thus, we affirm the Bankruptcy Court's find-

ing that the entire amount of damages in the amount of $6,878,248.45,[9] including pre-and post-judgment interest, is excepted from discharge. *Cohen*, 118 S.Ct. at 1215. The focus is the debtor's liability, not what the debtor actually profited from a fraudulent scheme.[10] *See Cohen*, 118 S.Ct. at 1217 ("Section 523(a)(2)(A) also describes misconduct ... even if it first specifies the result of that conduct ...."); *see also Bombardier Capital, Inc. v. Baietti (In re Baietti)*, 189 B.R. 549, 555 (Bankr.D.Me.1995) ("[Section] 523(a)(2)(A) does not require that a debt excepted from discharge be one for property acquired by the debtor[.]") (cites in footnote 9 omitted); *Federal Deposit Ins. Corp. v. Bombard (In re Bombard)*, 59 B.R. 952, 954 (Bankr.D.Mass.1986) ("[I]t is not necessary that the property obtained by false pretenses be actually procured for the debtor himself.").

In this Panel's prior opinion, we noted that, although the First Circuit had not decided the issue, other circuits had split on the issue of whether non-compensatory damages may be excepted from discharge under section 523(a)(2)(A). The Panel adopted the position of the Ninth Circuit and found that the non-compensatory damages in this case, the RICO damages of $2,369,901.72, costs and fees of $1,500,000 and damages of $1,579,934.48 under chapter 93A were dischargeable. Since issuing that opinion, the United States Supreme Court in *Cohen v. De La Cruz* has rejected the reasoning of this Panel's prior opinion limiting the damages that would be excepted from discharge under section 523(a)(2)(A), holding that section 523(a)(2)(A) prevents the discharge of all liability arising from fraud and that an award of treble damages, therefore, falls within the scope of the exception. Therefore, $6,878,-248.45 in damages is excepted from discharge.

### IV. Conclusion.

This Panel, having affirmed the Bankruptcy Court's granting of the Appellee's motion for summary judgment on the basis of collateral estoppel, holds that all of the damages awarded by the District Court and affirmed by the First Circuit are debts arising out of the Appellant's fraud; thus, these debts are excepted from discharge under section 523(a)(2)(A). As the Supreme Court said, "[i]n short, the text of § 523(a)(2)(A), the meaning of parallel provisions in the statute, the historical pedigree of the fraud exception, and the general policy underlying the exceptions to discharge all support our conclusion that 'any debt ... for money, property, services, or ... credit, to the extent obtained by' fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen*, 118 S.Ct. at 1219. Moreover, in our previous opinion, we held that the Appellee's summary judgment was affirmed on every issue except that of damages. *Aetna Cas. and Sur. Co.*, 208 B.R. at 252. In light of *Cohen*, we hold that summary judgment is granted in its entirety, as all the damages arising from a defendant's conduct may be excepted from discharge. *Cohen*, 118 S.Ct. at 1212.

■ The Panel recognizes that exceptions to discharge are narrowly construed in favor of debtors to further the fundamental policy of the Bankruptcy Code to provide debtors with a fresh start. However, no debt will be discharged if a debtor incurred it by "false pretenses, a false representation, or actual fraud." § 523(a)(2)(A). *E.g.*, *In re Christian*, 172 B.R. 490, 499 (Bankr.D.Mass.1994) ("[T]he Bankruptcy Court is not a forum for excusing misconduct."); *see also Cohen*, 118

9. Under the judgment rendered in the District Court, the Appellant was found jointly and severally liable in the sum of (i) $2,369,901.72 (Aetna's actual damages of $789,967.24, trebled under RICO); (ii) prejudgment interest at the rate of 12% per annum from October 2, 1989 on $2,369.901.72; together with (iii) costs, expenses, disbursements, and attorneys' fees in the aggregate amount of $1,500,000. The jury also found the Appellant individually liable under chapter 93A for the sum of $1,579.934.48. Thus, as of the Appellant's petition date, he was liable for a total of $6,878,248.45.

10. The Appellant has tried to persuade the Panel that he should only be liable for that amount which he received, or by which he profited, which runs directly afoul of the Supreme Court's holding in *Cohen*. *See Cohen*, 118 S.Ct. at 1217.

S.Ct. at 1216 ("The Bankruptcy Code has long prohibited debtors from discharging liabilities incurred on account of their fraud, embodying a basic policy animating the Code of affording relief only to an honest but unfortunate debtor."). The Appellant refuses to see the forest for the trees. The Panel, however, sees the forest. We agree with the Bankruptcy Court's statement that "[i]t is difficult to imagine clearer evidence of fraud within the meaning of 523(a)(2)(A)." R. at 621. This matter does not warrant a full trial again. Fraud abounds, and, plainly put, there is so much of it that we deny the Appellant's motion for summary judgment and affirm in its entirety the Bankruptcy Court's opinion finding all debts excepted from discharge.

**SO ORDERED.**

### *ORDER*

PER CURIAM.

The Appellant Jack Markarian ("Markarian"), moves to vacate the Panel's October 28, 1998 opinion and order ("Order") and to dismiss his appeal *nunc pro tunc* to February 18, 1998. For the reasons that follow, we deny the Appellant's motion.

#### *Background*

On January 22, 1998, Markarian submitted an Assented to Motion of Debtor to Approve Settlement Agreement and Dismiss Bankruptcy Action to the Bankruptcy Court for the District of Massachusetts ("Bankruptcy Court") in his case-in-chief. That motion moved for approval of a settlement agreement between Markarian and the Appellee, The Aetna Casualty and Surety Company ("Aetna") and voluntary dismissal of Markarian's Chapter 7 case. On February 18, 1998, the Bankruptcy Court approved the settlement agreement and dismissed the case. The clerk's office entered the order on February 20, 1998, and the Notice of Dismissal on March 4, 1998.

However, at the time the parties submitted the motion to the Bankruptcy Court for approval of the settlement, the Panel had Markarian's appeal under submission. Neither party alerted the. Panel of an impending settlement or of the Notice of Dismissal. The Panel issued its second opinion in this matter on October 28, 1998.[1] We note that our second opinion vacated portions of our first opinion and affirmed the Bankruptcy Court's decision granting summary judgment.

#### *Discussion*

Markarian argues that we should vacate[2] our Order and dismiss his appeal *nunc pro tunc* because no case or controversy existed when we issued our Order on October 28, 1998. In support of his argument, Markarian cites to only two Eleventh Circuit cases, *Flagship Marine Servs., Inc. v. Belcher Towing Co.*, 23 F.3d 341, 342 (11th Cir.1994), and *Key Enters. of Del., Inc. v. Venice Hosp.*, 9 F.3d 893, 900 (11th Cir.1993) ("When the settling parties filed the joint motions, no case or controversy existed. Consequently, we no longer had jurisdiction over the issues presented and should have immediately dismissed the appeal in accordance with *Ghandtchi.*"). We note that *In re Ghandtchi* 705 F.2d 1315 (11th Cir.1983), cites to *United States v. Munsingwear, Inc.*, 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), the holding of which has been limited by *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994) ["*Bonner Mall*"]. Markarian, however, failed to cite to this leading case on this matter.[3]

---

1. After the Panel issued its first opinion from an appeal from the Bankruptcy Court, Markarian moved for a rehearing, which was granted.

2. The Panel's power to vacate is provided by 28 U.S.C. § 2106 (1988), which provides:

 The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances.
 § 2106.

3. On September 7, 1997, the Panel issued an Order in which we stated:

 It should also be noted that the Appellant failed to mention, let alone distinguish *Bonner Mall*, the Supreme Court's most recent pro-

We hold that since the Bankruptcy Court did not have jurisdiction to approve the parties' settlement and dismiss the case, the settlement and dismissal are void; therefore, a case or controversy still existed when the Panel entered its Order.

A. *The Bankruptcy Court's Jurisdiction.*

 We hold that the Bankruptcy Court did not have jurisdiction to approve the parties' settlement on the merits and dismiss the case.[4] As stated by the Ninth Circuit:

> The general rule is that once a notice of appeal has been filed, the lower court loses jurisdiction over the subject matter of the appeal. As stated in 9 Moore's Federal Practice, 2d ed., ¶ 203.11, pp. 734–36:
>
> > The filing of a timely and sufficient notice of appeal has the effect of immediately transferring jurisdiction from the district court to the court of appeals with respect to any matters involved in the appeal.... Thus, after a notice of appeal is timely filed, the district court has no power to vacate the judgment, or to grant the appellant's motion to dismiss the action without prejudice, or to allow the filing of amended or supplemental pleadings. (Footnotes omitted.)
>
> *Accord, Ruby v. Secretary of the U.S. Navy,* 365 F.2d 385 (9th Cir.1966), *en banc, cert. denied,* 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967); *Corn v. Guam Coral Co.,* 318 F.2d 622 (9th Cir.1963); *Resnik v. La Paz Guest Ranch,* 289 F.2d 814 (9th Cir.1961). This rule is clearly necessary to prevent the procedural chaos that would result if concurrent jurisdiction were permitted.

*Bennett v. Gemmill (In re Combined Metals Reduction Co.),* 557 F.2d 179, 200 (9th Cir. 1977); *accord Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 378, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985) (quoting *Griggs* ); *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); *Jusino v. Zayas,* 875 F.2d 986, 989 (1st Cir.1989) ("To be sure, the district court waited over a year to act—and when it did, the case was on appeal. Technically, the district court lacked jurisdiction at that time and, before granting reconsideration, should have issued a brief memorandum asking us to remand."); *Peterman v. Indian Motorcycle Co.,* 216 F.2d 289, 291 (1st Cir.1954) ("[O]n July 13, 1954, the district court no longer had control over that judgment, since the plaintiff had filed his notice of appeal therefrom on June 21, 1954, and the case was pending within the exclusive jurisdiction of the Court of Appeals.").

Further, this holding rests on sound public policy. Judicial precedent is not the property of the private litigant. *See U.S. Bancorp Mortgage Co.,* 513 U.S. at 26–27, 115 S.Ct. 386 (*citing Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.,* 510 U.S. 27, 40, 114 S.Ct. 425, 126 L.Ed.2d 396 (1993) (Stevens, J. dissenting)). It is an understatement to say that allowing the kind of backwards approach to litigation that the parties present to us today would uproot the "orderly operation of the federal judicial system." *U.S. Bancorp Mortgage Co.,* 513 U.S. at 27, 115 S.Ct. 386. It would, in fact, disrupt it completely. The minor benefit of encouraging settlement is eclipsed entirely by the disruption that vacating issued Bankruptcy Appellate Panel opinions and dismissing ap-

---

nouncement on the issue of vacatur. Had the case law been even perfunctorily researched and Shepardized, it would have been apparent that *Bonner Mall* limited the holding in *Munsingwear,* and precludes *Munsingwear* 's applicability to this case. Having filed the instant motion without a determination that it was warranted by existing law, the Fund and its counsel are subject to the imposition of sanctions for violation of Fed. Bankr.R. 9011. However, we will treat this infraction as a warning to the Fund that it has used its "one free bite."

*New England Teamsters and Trucking Indus. Pension Fund v. CD Realty Partners (In re CD Realty Partners),* No. 97–009, slip op. at 3 (1st Cir. Sept. 7, BAP 1997). We also extend this favor to the Appellant herein today.

4. Although appearing to have been entered in the case-in-chief, the parties' settlement compromised the adversary proceeding. However, we note that both remain open because the Bankruptcy Court had no jurisdiction to settle the adversary proceeding which was on appeal.

peals *nunc pro tunc* would effect on the appellate process.

### B. *The Case or Controversy Existed When the Panel Entered its October 28, 1998 Order.*

Since the Bankruptcy Court had no jurisdiction to approve the parties' compromise and enter dismissal, those orders are void; therefore, a case or controversy still existed when the Panel issued its October 28, 1998 Order.

The Supreme Court in *Bonner Mall,* after referring to section 2106, *see supra* note 2 and accompanying text, reminds us that federal courts may not "decide the merits of a legal question not posed in an Article III case or controversy." *U.S. Bancorp Mortgage Co.,* 513 U.S. at 21, 115 S.Ct. 386. It prescribes that the only action for a federal court posed with such a circumstance is to "make such disposition of the whole case as justice may require." *Id.* (*citing Walling v. Reuter Inc.,* 321 U.S. 671, 677, 64 S.Ct. 826, 88 L.Ed. 1001 (1944)). Under the equitable doctrine of vacatur as outlined in *Bonner Mall,* federal courts are required to decide whether the "mootness" was caused by the movant's voluntary action or happenstance. *Id.* at 24–26, 115 S.Ct. 386.[5] However, we need not determine this issue since we hold that the Bankruptcy Court did not have jurisdiction to enter its orders approving the settlement and dismissing the case.

Therefore, for the aforementioned reasons, we hold that a case or controversy still existed when the Panel issued its October 28, 1998 Order. Therefore, Markarian's motion is denied. Finally, the Panel notes that its Order still stands, from which either party may appeal.

SO ORDERED.

---

**5.** For example, in *United States v. Hamburg–Amerikanische Packetfahrt–Actien Gesellschaft,* 239 U.S. 466, 477–78, 36 S.Ct. 212, 60 L.Ed. 387 (1916), the Supreme Court found that no case or controversy existed as to whether a certain combination of steamship companies violated the Anti-trust Act because World War I (called the "European War" in the decision), the "happenstance," mooted the question—all business had ceased. The Supreme Court directed that the court below reverse the case with instructions to the court below to dismiss without prejudice. *Id.* at 478, 36 S.Ct. 212.